Welcome to day four of our panel. This is the only admonition I want to give this morning. You're familiar with the light. Despite reminders about staying in the microphone and keeping your voice up over the week, lawyers have still tended to kind of get low and so forth. So stay in the mic, keep your voice up so we can hear it up here, and we'll try to do likewise with our questions. Sometimes those in the audience want to hear what you're saying as well. So at any event, if you'll stay in the microphone, we'll get a good recording. All right. First case up is Lee versus Lynch. Mr Rania. Good morning. I must say, I do not recall the podium being quite so far up in my practice before the Fifth Circuit. May it please the Court. Do you prefer to move it back? Fine, Judge. May it please the Court. Joseph Raina for the respondent, arguing for Brian Bates. Either the petitioner must have admitted a disqualifying controlled substance offense, which he has not, or he must have been convicted of one. Unlike other subsections of the statute that is at issue, 1182A, subsection A2A does not render an applicant inadmissible on the basis of suggestions or of information or even evidence that comes up short of a conviction. The government would have this Court construe this subsection, this ground of inadmissibility, as if its language were the same as that contained in subsection 1182A2C, which, for example, renders inadmissible an individual who the government has reason to believe has been a trafficker in controlled substances. Reason to believe is not the standard. Either the applicant must have made an admission, or he must have been convicted of an offense that actually disqualifies him. Didn't he plead guilty? There's no indication that he pleaded guilty to a disqualifying controlled substance offense. What we have are a pardon. Well, he says he was pardoned. What was he pardoned for? Wasn't that a substance abuse, trafficking crime? Well, first of all, we cannot tell from the all of them have been furnished, unlike, for example, in Almanza, whether the respondent was convicted in an indictable offense or it was a summary conviction under Canadian law. In addition to that, we also cannot determine the the meaning of this pardon and what what it meant to have paid a what really was a nominal fine. So I'll ask you about the documentation of the pardon. The BIA advised your client to apply for a release of those documents. Was that ever done? Was he allowed to see them and copy them if he wanted to, or if he didn't like what was in them, not copy them? All that was done, to answer Her Honor's question, and the result was that a document was received after the record was closed that is not at all illuminating. It does not indicate anything any different from what is already in the record of proceedings. It doesn't it doesn't say what crime he was pardoned of? It does not. It states that there that they cannot that the authorities, the Royal Canadian Mountain Police, was unable to uncover records relating to the alleged conviction. What about the pardon? Unfortunately, it's not it doesn't illuminate what what is meant by the pardon. Do you have that document? Do we have the document? I apologize. I'm coming into this case very late for Mr. Bates, who is in the hospital, but I believe the court should have the document. Of course, if not, the petitioner will. After the argument, find out whether we have it or not. Yes. A Rule 28J letter identifying where we can find it. Very well. The letter which says that it's sort of in lieu of a pardon, it's a letter instead of an actual, it's not an official court entry, but it's a letter from the Canadian government, and that's what the what the pardon information is based on, other than his testimony. Well, that that is correct, and I'm glad, Judge, that that's come up because the Immigration and Nationality Act, the statute itself, specifies five types of documents that can be used to establish a conviction, and there hasn't even been a suggestion in this case that any of the documents that as any of those five types of documents. And so, for that reason, in addition to the fact that there is not a conviction, the petition should be granted and the BIA's decision should be vacated. Go ahead, I'm sorry. You go ahead, Your Honor. All right, so whose burden is it in this? I mean, unlike when we're doing crimes of standalone crime, yai, yai, yai, in this context, is it the petitioner's burden, if you will, to establish it? I know he complained about trying to prove a negative, so to speak, but what's your best law or controlling principle on ascertaining, you know, the burden? In other words, if it's not there, is that inured to his detriment? Is the BIA supposed to come out? If he pled guilty and there's some assumption it must be to say a felony, is it his burden to disprove that? Is it his burden to prove that the pardon inexplicably wipes it out, or can he just say, I got a pardon and where we are? So what's our most controlling law on that piece of the puzzle? Well, Your Honor, the burden created by the statute itself and as calls on the alien to produce evidence and come forward with evidence. The burden does actually states that the alien must prove that he is eligible, that he meets the eligibility requirements, and that he warrants or deserves a favorable exercise of discretion. The language of the Real ID Act does not specifically state that an applicant must disprove every ground of inadmissibility. So what I mean by that is, for example, an applicant for adjustment of status, such as the petitioner Mr. Lee, must demonstrate that he entered the United States lawfully or he cannot apply for adjustment of status. That he's an immigrant visa is immediately available to him and certain other requirements. He must file a medical examination. He must pay the fee that accompanies the application for it to be considered. However, no court has indicated ever specifically the Real ID Act extends to a requirement that the applicant disprove every potential ground of inadmissibility. Well, that may be true, but this case is not just a disprove abstract potential grounds, but because your client, unfortunately, brought up a potential problem during his own testimony. So while you wouldn't have to in the abstract disprove every possible ground to get it, once the court becomes . . . the immigration judge becomes on notice that there is a potential problem, he would have to disprove that, and that's what the problem is in this case. Because he's the one who raised the problem, and I'm . . . so that . . . can you help us with that? Well, I believe so, Judge, at least I certainly hope so. To answer Her Honor's question, as I understand the record, the applicant sought adjustment of status and, on several occasions, no impediment to his adjustment was ever uncovered. At a hearing, counsel for Immigration and Customs Enforcement, at one point, raised whether he might be inadmissible over a potential drug conviction. At that point, the respondent then gave testimony, which, incidentally, the immigration judge found to be trafficking, and that's the word he used. I understand his testimony to be that he had given someone a ride. He picked someone up who, ultimately, was . . . may have been convicted of a controlled substance offense. But even if the respondent were convicted, even if we were to assume that he was convicted of a controlled substance offense, he must have been convicted of violating a statute or regulation relating to a controlled substance, as that term is defined in Section 102 of the Controlled Substances Act. And we don't . . . because the record is essentially unavailable, there's nothing more that can be produced, and there's nothing more that can be uncovered. There is no way to know if he possessed a . . . or even had or violated a law relating to what is classified as a controlled substance. So . . . Why isn't that a disadvantage for you also? Because if we were dealing with whether the modified categorical approach applied or even the categorical approach, usually the . . . even in the criminal case that we would have, routine . . . we have all the time, the defense lawyer, the appellant comes to us and says, this statute doesn't break down correctly, and therefore we win. And they do that all the time. You can't come to us with a statute and say it doesn't break down, because you don't have a statute. We don't have the criminal statute, but we also don't have conclusive evidence of a conviction. And under the analysis of the Supreme Court in Moncrief, there has to be a conviction that necessarily makes the respondent or petitioner for this court inadmissible to the United States. Otherwise, this statute would read just like the statute that allows the government to exclude an individual on the basis of a reason to believe. What we have, at best, is a reason to believe. And when Congress uses terms, as this Court has indicated many times, in one place but does not use them in another, courts ascribe a meaning and they give effect to the difference in that language. Otherwise, this individual and many, billions perhaps, could be excluded on the basis of a reason to believe without a conviction. And he either was convicted of a qualifying offense or he was not. And even the evidence of some conviction is insufficient to establish categorically that he was convicted of an offense within the definition of 102 of the Controlled Substance Act. Are you harmed by Vasquez-Martinez? Because under that case, the offensive conviction is a factual determination, not a legal one. And so, if they've determined that there's been a conviction, I mean, you could still argue the legal point that it's not the right conviction, which is—to say there's not a conviction here, don't you have a tough row to hoe? Well, it appears that the respondent, that the petitioner, was convicted of something. It certainly can appear that way to very reasonable minds. However, we still do not know if it was a summary conviction or if it was an indictable offense. We don't have records. We don't know if he was convicted of possessing a substance that is included in the definition of our Controlled Substance Act. So we can't establish that he has a conviction that is disqualifying. I'm not concerned as much about Vasquez because I believe, and I think this Court should conclude, that the question whether he has a conviction for an offense violative of the Controlled Substance Act is a legal issue. He either has to have a conviction or he does not. Factually, he's produced everything. He's testified to what occurred. What we cannot know, and in some ways is an impossible burden, is whether his conviction reaches the Controlled Substance Act and whether, therefore, he should be disqualified. If you were correct, and we can't know that, can we still affirm on the issue related to him not having the continuous presence, the proper presence, of the other issue? I don't believe that the continuous presence is an issue in this case because he's seeking adjustment, not disqualification. Or not, that he has other grounds that the Court has raised, that the government has raised before us that were not raised before that may mean that he's ineligible. Well, respectfully, those grounds don't apply. See, I've come very close to running out of time. I'll try to take that question up specifically in rebuttal, but I don't believe those grounds apply. The issue raised by the government applies to individuals other than an alien who is an immediate relative, as defined in the Act. In this case, because the respondent's spouse is a citizen of the United States, disqualifications, for example, such as unlawful employment in the United States or having entered on a visa waiver under Section 217, do not apply, though they would in other cases. Okay. So there's no other basis. So if you win, you win. And I would like just to say that there's only one case relied on by the Board, and it's one, essentially one paragraph, single-member opinion, and that's Almanza, which under Moncrief, we believe has been overruled, and specifically overruled by the Ninth Circuit. All right. Thank you, Mr. Wren. You've got your full rebuttal time when you come back up. All right. We'll hear from the Department. Mr. Bliss. Your Honors, may it please the Court, my name is Jesse Bliss. I represent the Attorney General of the United States. I think it's important, when I was reviewing this case, to go back and look at Jesse's presence in the United States. When he came to the border initially, the government flagged his conviction, but granted him a temporary waiver, so he was allowed to be admitted for a temporary time. So the conviction has always been a part of this case, and he's always been on notice of that conviction, and that was in 2002. He, outside of removal proceedings, he attempted to pursue adjustment of status. That's in 2005. It was in 2006. Subsequent to that application, Mr. Lee sought a pardon from the Canadian government, and he received one for the conviction, and all indications are the conviction was for possession of cocaine or narcotic. What's the evidence? You say all indications are. What's the evidence? What we know is there's ... Again, you wouldn't consider these shepherd which is an immigration report that we have, the former INS, have, and that dates from 2002, when Mr. Lee first sought admission. So that was the proof that was in there, and then there's also from the Canadian government, I believe that it says, in shorthand, possession of narcotic. What is that document? That is ... The court gave a jury instruction ... No, no jury instructions of this court. It was not objected to. The possession of cocaine ... What is that? I hope not. Sorry. Excuse me. So the possession of cocaine is at 281 of the record. But is that a shepherd document or not? It is not. We can't look at it. Well, we're not undertaking a categorical approach in this case. This case is more about a burden of production, and what we are left with is an inconclusive record. I will move two prongs three and four, and I'll start with Mr. Navarro, because his is, quite frankly, the most clear. Mr. Navarro, as he has acknowledged here, or as his counselor acknowledged here today, did not object to the jury instructions. His complaint was at sentencing the failure of the district court to make an individualized finding that would set the guideline range. He argues that the court did not make such a finding. I pulled up the record here, and the district court says on page 3961 of the record, the court finds that Mr. Navarro was operating the stash house for longer than three to four months, up to six to eight months, and that not only in these 12 phone calls, but in his other dealings in distributing that it was conceivable to Mr. Navarro that the conspiracy involved five or more kilograms of cocaine. Why don't you just stop this clock for a moment, and maybe we'll figure it out in a second or so. I'm giving him two points off for the amendment. That set his guideline range at 168 months for count one. Here, the mandatory minimum would have been 120 months had it been set by the jury. Now it's gone. She left, and it left. I thought maybe it was somebody's phone or something. Well, I thought it was a radio transmission, too, as opposed to an argument. I guess we've got argument in both the courtrooms. But it's an argument. It's definitely an argument. I just couldn't tell. I don't even remember if we still had panels in all three. Leslie has a panel, but I don't know if there's another one. Sometimes about Thursday, one of the panels says go home. There's another one Thursday. I know there's at least one. Judge Haynes and Judge Jolly and Judge Costa are all sitting together, and I thought that was that argument, because I thought I heard Judge Haynes, but I'm not positive. Frequently, we'll have three, but by the time we get to Thursday, one of them would have been a three-day, so they'd be gone. So sometimes it's only two or one. I rarely have four days. Yeah, left on. It's unusual. They started on Tuesday. Oh, okay. Leslie. Yes, and I think the other one may have. No, not quite. Hmm? Yeah, when Kim left, it stopped. That amount was unrealistically low for Mr. Benitez. The court, the PSR listed an amount that was of about 1.3 kilograms. That amount of cocaine. That amount was only the undercover buys, and the amounts actually seized from him. Now, as the court pointed out at sentencing, there were calls that showed that he was distributing quite a bit more than that. Plus, he was dealing directly with two or three or something. And Mr. Salinas Galera, who did not appeal his conviction, who were receiving amounts directly from the head of the conspiracy, and they were dealing a lot of dope, and the dope that they were dealing was foreseeable to Mr. Benitez because he was dealing directly with them. And not just as a buyer. They were trading money back and forth. They were fronting. He was definitely working with those. So, the amount would have been well over 5 kilograms for Mr. Benitez. Had the court found that. Now, the court did not actually use the words foreseeable in sentencing, but there is this discussion about what Mr. Benitez knew and who he was dealing with. So, even though he didn't use the magic words, the court agreed. So, when I get to class, I got all this stuff done as opposed to getting home and I still got to do it. So, I just load up another briefcase with that kind of stuff and put it in. So, going back, you're signing vouchers and signing off on stuff. So, I feel like when I get back, it's productive. You don't have all this stuff to do. So, where it's flying, I wouldn't ever haul all that stuff. All right. Okay. Thank you. We're good? All right. All right. We're back on. You're up. Sorry for the interruption. Hope we didn't break your chain of thought. I believe when we left off, I was asked about documents. Right. You had said that we weren't in. The question was whether we had shepherd-like documents or not or what do we have and to what extent can we rely on them? Yeah. Well, at 284, there is a record from Canadian authorities and it says possession of narcotic. So, again, that's at 284. What is the document? What's it called? How was it generated? Who got it? What does it purport to be provided for? It's a document. I believe it's a visa document generated in Canada that has his fingerprints. On the second page, it has a picture of the petitioner. On the second page, it says criminal convictions, conditional and absolute discharges and related information. And then there's what appears to be a French version of that. It has the petitioner's name, charge accusation, and then disposition. And then it has convictions listed or charge and then disposition of two offenses. One is not an issue in this case. What's the offensive conviction? The charge was possession of narcotic. And then we have a fine and then 21 days is listed, ID 21 days. It looks like he got the 21-day sentence. That's not really an issue. It looks like probably 21 days may be sentence suspended or he served time beforehand. Just paid a fine? Yes, Your Honor. What if the record is ambiguous as to whether the crime ended up being a minor thing that he pled to, whereas maybe he was charged with trafficking, as his testimony says, but that he pled down to something? How does that cut? When Congress codified the burden of proof at INA 240C4A, this was subsequent to the adjustment of status statute and all discretionary relief. It stated unambiguously that the applicant bears the burden of proof on statutory eligibility requirements. One of those in this case is proving admissibility and that you're not inadmissible. And the regulation, which is also a legacy regulation that's been on the books for years, says that the standard is by preponderance of the evidence. And every court to have looked at this issue has held that when there's ambiguity, the applicant has not shown by preponderance of the evidence that they meet the requirements. And a great case that is Salem in the Fourth Circuit, they really have a very thorough analysis of exactly how this plays out. What case? It's Salem. I can give you the same. I can agree. That's fine. And this court has touched on it a little bit. There's a concurrence by Judge Garza in a case called Garcia, where he concurred the judgment, but he wrote because he thought the case should have broken down on burden of proof grounds. And he explained why when there's ambiguity, the applicant cannot meet his or her burden. There's also an unpublished case that I did not set, but I have. It's Francis, which is a recent case in this court, where, again, the person, the issue in that case was we don't really know if this person was convicted of an aggravated felony or not. But because he was pursuing relief, he could not show that he was eligible for the relief. You said that wasn't cited? Well, it was subsequent to our briefs, and it was unpublished. But I can give you— Have you given it to the other side if you're going to talk about it today? I think we—let me see if I had it or not. Because I did produce the First Circuit case, Salcedo. But let me—I may have. I know I heavily relied on Vasquez. Let me make sure. Well, go ahead and make your argument. If necessary, we'll see if he's familiar with it. If it's not, if we've got to hear more about it, we can. Well, I mean, I do want to point out it's not published. But the Garcia case is published. And, again, that's a concurrence. But the cases we do cite, you know, Salem again, it breaks the issue down the way the plain language of the statute requires, which is when there's ambiguity and you have the If it's inconclusive, you just—you cannot meet that burden of proof. Is it really—is there ambiguity here? Because, I mean, this is kind of on the weak side with the just being a fine and, you know, is there ambiguity here? We do know that someone, regardless of the fine, if you are convicted of a controlled substance offense, you're not admissible. And so when Mr. Lee showed up at the United States border in 2002, they said you are not eligible for admission. And that's essentially what adjustment is. Adjustment treats the person as if they are entering at the border. Because, historically, that's actually all adjustment applicants had to go back to the border. And so we're treating him as if he's showing up, asking to come into the United States. And at that point, with foreign convictions in particular, it's very hard for the United States government to know what went on, which is why Congress decided to put the burden at the applicant's feet to show when you're trying to be admitted into this country that you do not have disqualifying convictions. You know, there's very, you know, public safety grounds for that. It's just—that's the way it works. So to think this out, if someone could come in and—well, in this case, I mean, in 2007 when he obtained the pardon, the Canadian government told Mr. Lee, if you would like the documents related to your conviction, let us know. In fact, I think they even said send us an email. If not, we'll—we're going to destroy them. He didn't do anything to obtain those vital documents to meet his burden of proof, although they were offered to him. And in this situation, there's no way to show that he could meet his burden. He had the opportunity to obtain vital documentation proving his admissibility. You mean back in 2002 when the documents existed? No, when he went to get his pardon in 2007. They still existed then? Yes. He should have gotten a copy and carried them in his pocket from then on. And that's why the theme I'm trying to convey is this is a—this conviction wasn't sprung on him in removal proceedings. He knew at the doorstep when he came in. He knew when he applied for adjustment. He knew when he was pardoned. And then he knew in removal proceedings that this conviction is there. You know, you need to show us that it didn't exist or it was not a controlled substance offense. And he did not— Maybe he knew it existed for cocaine possession. That's exactly right. So he didn't obtain the records. And you bring up a great point because when I said it was a burden of production case, the reason the Board has developed the burden of proof case law is that— if they cannot produce things, if applicants for relief can simply say, I'm not going to produce documentation, but I win, it throws the burden of proof issue on its head. Because, of course, if this was a—if the government were the burden of proof in this case, it would be quite different. And in that, we all know that the government has to produce documentation to meet their burden. It's just he or the burden is on the other side. Didn't you make a continuous presence argument? I—it's not—I put it in there. Did you withdraw that argument? Yes. We shouldn't consider that. No, it was—it's a Chenery—you know, you're wed to the Board's reasoning. I apologize for confusion on that. I saw that in the reply brief. That was just— So we should ignore that. Ignore it. You withdraw that argument. Okay. It rises or falls on the Board's reasoning. Okay? Do you have any further questions? I think we've got your argument. Thank you very much. Thank you very much. Excuse me. Mr. Rainier, you have right of rebuttal. I just want to make one or two very brief points to the Court. The Ninth Circuit ultimately vacated Almanzar-Rennes and held that an inconclusive record did not establish an applicant's ineligibility for discretionary relief and found that Moncrief abrogated the earlier decision in Young. The Salem case mentioned by my colleague is an apposite because it involved an applicant who was a permanent resident applying for cancellation of removal, a waiver of deportability or of inadmissibility. That means it involved a case in which an immigration judge had already determined that the particular permanent resident at issue there was inadmissible or deportable, and he was seeking a waiver of inadmissibility, and the waiver of inadmissibility required demonstration of certain statutory requirements of mere eligibility to be able to be heard on the waiver at all. And they were that he not have been convicted of an aggravated felony, that he had been a permanent resident for at least five years, and that at least seven years had passed since his admission to the United States before commission of the offense that triggered his deportability or his inadmissibility. And without making a prima facie showing that those three requirements are satisfied, an applicant who's a permanent resident cannot seek cancellation of removal. Now, in Salem, it was over an aggravated felony, but it's an apposite because there his inadmissibility or deportability had already been determined. This case is about whether Mr. Lee is – there's sufficient documentary evidence that Mr. Lee is inadmissible at all. So we're going to be joining the circuit split on one side or the other, is that right? If we decide this case – I should have asked the other government this as well – but isn't there – there's a circuit split on inclusive record, and we're going to have to pick a side. Is that right? Yes, I would say so, Judge, depending to some extent on how the opinion ultimately is written. Again, I don't believe that any of the other cases, and the First Circuit case in particular, actually involves reliance on some extension of the real ID to disproving a negative. The problem with this case is that this man, whose wife is a U.S. citizen, has – there's a record. There's some document that states from the Canadian authorities that they can't find a record of conviction, and then there's a pardon document. And certainly, if the requirement of the legal test were reason to believe perhaps one could conclude he's inadmissible, but we don't have the conclusive evidence. And the question is, if he can't disprove a negative, once it has been suggested that he has or may have a controlled substance conviction for a substance listed in our Controlled Substance Act, does he have to go beyond producing everything that is available? This is not like Almanza, where the applicant was told, you didn't bring me this. I want you to go get this. And the judge specifically admonished him to do that. What do you do with counsel's statement that early on in the process he received this email from the RCMP that he could get the documents or they would destroy them, etc., etc., but yet he did not? Judge, with all due respect, I believe that the respondent, despite the fact that, of course, he probably could remember his arrest and was on notice in that sense, he likely was misled by the fact that earlier no impediment to his adjustment of status had been raised. And it was not until when he was in removal proceedings that this – that he was – that it was raised in court. But it was raised in 2002, according to opposing counsel, that he had to get the temporary waiver. So it was raised instantly when he was coming into the country. Yes, I appreciate Her Honor mentioning that because it reminds me to make a point, and that is it was raised, but the fact that the agency believed he needed a waiver, but the fact that officers at the border believed he needed a waiver does not mean that he was actually convicted. And granting him a waiver cannot retroactively substitute for a record of a conviction that is disqualifying. All right. Thank you, Mr. Rainier. I appreciate your advocacy in this case. Thank you, Mr. Blumenthal.